NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY *as subrogee of SRI International*,<br><br>Plaintiff,<br><br>v.<br><br>GETFPV LLC, *et al.*,<br><br>Defendants. | Civil Action No. 24-8922 (ZNQ) (RLS)<br><br>**OPINION** |

QURAISHI, District Judge

THIS MATTER comes before the Court upon a Motion to Dismiss for lack of personal jurisdiction filed by Defendant GetFPV LLC ("GetFPV") and Lumenier LLC ("Lumenier") (collectively, "Defendants") (the "Motion," ECF No. 11). Defendants filed a brief in support of the Motion ("Moving Br.," ECF No. 11-3) and various exhibits including a certification of Andy Graber, the Vice President of eCommerce at Lumenier ("Graber Certification," ECF No. 11-2). Plaintiff American Guarantee and Liability Insurance Company ("Plaintiff" or "American Guarantee") filed an opposition brief ("Opp'n Br.," ECF No. 13) and various exhibits including a certification of counsel (ECF No. 13-1), a picture of a LinkedIn profile of a former employee of non-party subrogor SRI International (ECF No. 13-2), a copy of an email/shipping confirmation from GetFPV (ECF No. 13-3), copies of pages from GetFPV's website (ECF No. 13-4), and information about GetFPV from the Delaware Secretary of State (ECF No. 13-5). Defendants filed a reply brief. ("Reply Br.," ECF No. 17.) The Court has carefully considered the parties'

1

submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil

Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will **DENY**

the Motion.

I.      **BACKGROUND AND PROCEDURAL HISTORY**[2]

  A.      **FACTUAL BACKGROUND[3]**

   Plaintiff brings its claims as subrogee of SRI International[4], its insured, against GetFPV,

Lumenier, and Amazon.com, Inc. ("Amazon").  (*See generally* Am. Compl.)  Plaintiff is a New

York corporation who conducts business in New Jersey.  (*Id.* ¶ 1.)  GetFPV is a Delaware limited

liability company with a principal place of business in Sarasota, Florida.  (*Id.* ¶ 2.)  GetFPV is "a

product seller, retailer, and/or distributor that . . . ships products throughout the United States."

(*Id.*)  Lumenier is a limited liability company formed under the laws of Delaware with a principal

place of business in Florida.  (*Id.* ¶ 3.)  Lumenier is a wholly owned subsidiary of Lumenier Holdco

LLC, whose sole member is a Delaware C-Corporation.  (Graber Certification ¶¶ 4, 5.)  GetFPV

is also a wholly owned subsidiary of Lumenier Holdco LLC.  (*Id.* ¶ 3.)  Amazon, although not

involved in this Motion, is a Delaware corporation with a principal place of business in

Washington.  (*Id.* ¶ 4.)

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] For the purposes of considering the Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The facts are derived from the Amended Complaint.  (ECF No. 23.)  Although the Amended Complaint was filed in response to a pre-motion letter filed by Amazon, there are no changes to the allegations against GetFPV and Lumenier. Given that the Complaint and Amended Complaint are the same as to GetFPV and Lumenier, the Court applies the current Motion to Dismiss to the Amended Complaint.
[4] As alleged, "SRI International is an independent nonprofit research institute which, among other things, builds and tests products, including night vision cameras.  The company owns and operates a facility at 201 Washington Road, West Windsor, New Jersey."  (Am. Compl. ¶ 7.)  American Guarantee is a subrogee of SRI International because it provided insurance coverage to it and the insurance policy between the parties states that American Guarantee is permitted to bring claims on SRI International's behalf.  (*Id.* ¶¶ 21, 24.)

The facts involve multiple entities involved in the production, research, testing, and selling of drone and other technological equipment. (*See generally* Am. Compl.) The history begins when non-party subrogor SRI International provided night vision cameras to non-party Ansible Industries, Inc. ("Ansible") in exchange for prototype night vision binoculars. (*Id.* ¶ 8.) The night vision binoculars acquired by SRI International required a battery and a charger to function. (*Id.* ¶ 10.) Non-party ToolkitRC Technology Co., Ltd.—a company with no United States presence— "designs, manufactures, and assembles Toolkit RC M7 200W 10A DC 7-28V Multi-Function Balance Chargers," which are used to charge the binoculars. (*Id.* ¶¶ 11–12.) On one occasion, Ansible representative Daniel Hendrix ("Hendrix") purchased a ToolkitRC charging pack from Amazon for use with the night vision binoculars. (*Id.* ¶¶ 13, 14.) Hendrix subsequently shipped the ToolkitRC charger to SRI International along with the binoculars. (*Id.* ¶ 14.)

Lumenier also designs, manufactures, assembles, sells, or otherwise distributes lithium polymer batteries on the GetFPV website. (*Id.* ¶ 16.) These batteries are used to charge the binoculars and could themselves be charged by the Toolkit RC battery packs. (*See generally id.* ¶¶ 16–17.) On another occasion, Hendrix purchased two Lumenier batteries from the GetFPV website for use with the binoculars. (*Id*. ¶ 17.) Those batteries were subsequently shipped to Eric Braddom ("Braddom"), in Yardley, Pennsylvania. (*Id.*)[5]

In August 2023, an SRI International employee was using the charging pack from Toolkit RC to charge one of the Lumenier battery packs when the battery pack suddenly failed, causing a fire and resulting in damage to SRI International's New Jersey facility. (*Id.* ¶ 18.) To be clear,

---

[5] Braddom was the Vice President of Product Management at SRI International from September 2019 through June 2024. (ECF No. 13-2.) He worked in Princeton, New Jersey during his stint with SRI International. (*Id.*) Plaintiff attached a copy of his LinkedIn profile to its opposition brief. (ECF No. 13-2.)

Amazon sold the alleged defective battery packs made by ToolkitRC, while GetFPV sold the alleged defective battery packs made by Lumenier.  (*Id.* ¶¶ 19–20.)

## B.    PROCEDURAL HISTORY

Plaintiff filed its original complaint on September 3, 2024.  (ECF No. 1.)  On September 23, 2024, only GetFPV and Lumenier filed the present Motion to Dismiss.  (ECF No. 11.)  Thereafter, Defendant Amazon filed a pre-motion letter pursuant to the undersigned's judicial preferences stating its grounds for an anticipated motion to dismiss.  (ECF No. 16.)  Plaintiff responded to Amazon's letter, noting that it would file an amended complaint to address Amazon's concerns.  (ECF No. 20.)  Plaintiff then filed its Amended Complaint (ECF No. 23), and Amazon answered and filed a third-party complaint against a party not involved in this Motion (ECF No. 24).

The Amended Complaint alleges two counts.  Relevant here, Count One asserts a products liability claim against Lumenier and GetFPV for selling and manufacturing a defective product that directly and proximately caused a fire at SRI International's New Jersey facility.  (Am. Compl. ¶¶ 29, 30.)  According to the Amended Complaint, Lumenier and GetFPV "are strictly liable for the fire and resulting losses."[6]  (*Id.* ¶ 31.)

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

## III.    LEGAL STANDARD

Pursuant to Rule 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  The plaintiff "bears the burden of demonstrating the

---

[6] Count Two asserts a tort claim against Amazon and is therefore not pertinent to the present Motion.

facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d

Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only

establish a *prima facie* case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566

F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). "It is well established that

in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's

allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v.*

*Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, "[w]hile disputed issues are construed in

favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits

or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere

allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5

(D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided

under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)

(citing Fed. R. Civ. P. 4(e)). And "the New Jersey long-arm statute permits the exercise of personal

jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254,

259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause

depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal

quotation marks and citation omitted). More precisely, "[t]he Due Process Clause of the

Fourteenth Amendment requires that non-resident defendants have 'certain minimum contacts

with [the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).

The inquiry as to whether a court may exercise specific personal jurisdiction over a non-resident defendant is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that for specific personal jurisdiction, the defendant must have "deliberately 'reached out beyond' its home" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))). The unilateral activity of a third party cannot satisfy the requirement that the defendant have minimum contacts with the forum state. *See Hanson*, 357 U.S. at 253 (noting that the mere "unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State").

Second, if there is purposeful availment by a non-resident defendant, a court may exercise personal jurisdiction over that defendant only when a plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

6

Third, if the non-resident defendant purposefully avails itself, and the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, "due process requires . . . that the maintenance of the suit [against the defendant] does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). And in determining whether the requirement to comport with "fair play and substantial justice" is satisfied, the court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). It must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

## IV.   PARTIES' ARGUMENTS

In the Motion, Defendants argue that the Court does not have personal jurisdiction over them because they are neither citizens of New Jersey nor have sufficient minimum contacts with New Jersey. (Moving Br. at 4.) Defendants contend that maintaining a website that is accessible in New Jersey is insufficient to confer personal jurisdiction. (*Id.* at 8.) Defendants argue that they did not target New Jersey; "[a]t most, Defendants maintain a website that permits individuals from New Jersey to make purchases." (*Id.* at 10.) Defendants also assert that the presence of the batteries in New Jersey was the result of fortuitous activities by non-parties and not Defendants' purposeful actions. (*Id.*) Additionally, Defendants argue that Plaintiff's claims do not arise out of or relate to their contacts with New Jersey because the "incident at issue is not the product of a sale to New Jersey, advertising in New Jersey, or any business by Defendants in New Jersey." (*Id.* at 12.) Lastly, Defendants argue that exercising jurisdiction over them would violate due process

because: the suit can easily be brought in Florida; having to defend the suit in New Jersey would cause burdens and hardships on Defendants; and Defendants have no employees or witnesses in New Jersey. (*Id.* at 13–14.)

In opposition, Plaintiff argues that GetFPV's purportedly "passive" internet presence in New Jersey is sufficient to confer specific personal jurisdiction over it because its website was interactive. (Opp'n Br. at 8.) According to Plaintiff, Defendants' purposeful availment is evident by GetFPV's website that allows New Jersey residents to fill out order forms and have the purchased products shipped to New Jersey, even though that is not what happened here. (*Id.* at 14.)[7] Plaintiff contends therefore that Defendants knowingly placed their products into the stream of commerce and there is personal jurisdiction over them in New Jersey. (*Id.* at 10.) Plaintiff also argues that its claims arise out of or relate to Defendants' minimum contacts because Defendants solicited sales in New Jersey, and it was foreseeable that they could be brought to New Jersey to defend a lawsuit. (*Id.* at 12.) Specifically, Plaintiff argues that the "Court must not look at whether the product GetFPV sold ended up in New Jersey as the result of a fortuitous event. Instead, the Court must look at GetFPV's contacts with New Jersey and decide if the suit arises out of or relates to those contacts." (*Id.* at 14.) As a final point, Plaintiff argues that exercising jurisdiction over Defendants comports with due process because New Jersey has an interest in protecting its citizens

---

[7] Despite arguing that Plaintiff can ship products to New Jersey, Plaintiff also acknowledges that "[e]ven if GetFPV does not ship to New Jersey, inviting residents from any state to order from its website amounts to the solicitation of business from New Jersey residents." (*Id.* at 9 n.6.)

from tortious conduct and Defendants ship nationally and purposefully reached out to New Jersey. (*Id.* at 18.)  In the alternative, Plaintiff requests jurisdictional discovery.  (*Id.* at 11, 12, 15.)[8]

## V.   ANALYSIS

There is no dispute that this Court lacks general personal jurisdiction over Defendants. (*See* Opp'n Br. at 7–8.)  Therefore, the Court considers only specific personal jurisdiction.  For the reasons that follow, the Court agrees with Defendants that on the present record, the Court does not have specific personal jurisdiction over them but that limited jurisdictional discovery is warranted.

### A.   PURPOSEFUL AVAILMENT

To begin, there are no allegations in the Amended Complaint that Defendants specifically targeted New Jersey.  The Amended Complaint provides that "GetFPV LLC is a product seller, retailer, and/or distributor that operates the website GetFPV.com and ships products throughout the United States and internationally."  (Am. Compl. ¶ 2.)  This sole allegation pertaining to GetFPV's online presence in New Jersey is broad and conclusory and, without more, does not support the exercise of specific personal jurisdiction.[9] *Rinaldi v. FCA US LLC*, Civ. No. 22-00886, 2022 WL 17340667, at *4 (D.N.J. Nov. 30, 2022) ("general allegations of marketing within the state, without more, do not support exercise of specific jurisdiction"); *Oyebanji v. Palmetto Vacation Rentals LLC*, Civ. No. 20-8983, 2021 WL 3732883, at *3 (D.N.J. Aug. 20, 2021)

---

[8] Plaintiff requests jurisdictional discovery on the following issues: "(a) GetFPV's purposeful availment of New Jersey; (b) whether GetFPV ships to any state regardless of whether the person ordering the product lives there; (c) the yearly number of GetFPV's shipments into New Jersey; (d) the yearly amount of GetFPV's sales into New Jersey and the yearly percentage of those sales; (e) GetFPV's marketing emails, including the type(s) of emails it sends to customers who order from its site and the emails it sends to customers living or located in New Jersey; (f) the reasons Hendrix purchased the Lithium Battery and shipped it to Braddom; (g) why Braddom took the Lithium Battery to New Jersey; (h) whether GetFPV's emails influenced Hendrix or Braddom and whether they received those emails in New York, Pennsylvania, and/or New Jersey; and (i) why Ansible purchased the Lithium Battery from GetFPV in the first instance." (Opp'n Br. at 16.)

[9] The Amended Complaint makes no corresponding allegation with respect to Lumenier.  For the reasons set forth below, the Court finds that jurisdictional discovery as to Lumenier is nevertheless appropriate.

("[A]bsent evidence that [the defendant] targeted its advertising efforts at New Jersey in particular, specific jurisdiction will not lie.").

On the facts alleged, Defendants' internet presence in New Jersey is likely insufficient to allow the exercise of specific personal jurisdiction. *See Toys "R" Us*, 318 F.3d at 457 (addressing the standard for personal jurisdiction based on the presence of a website and holding that when a defendant website "operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the purposeful availment requirement is satisfied"). Notably, the "mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 80 (3d Cir. 2015) (quoting *Toys "R" Us*, 318 F.3d at 454). Put differently, "there must be 'something more' . . . to demonstrate that the defendant directed its activity towards the forum state." *Desktop Techs., Inc. v. Colorworks Reprod. & Design*, Civ. No. 98-5029, 1999 WL 98572, at *5 (E.D. Pa. Feb. 25, 1999) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)).[10]

In response to this Motion, Plaintiff attaches Hendrix's GetFPV order confirmation which is insufficient to demonstrate a purposeful contact with New Jersey because it shows that GetFPV

---

[10] As noted by the Third Circuit, the "opinion in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997) has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet website." *Toys "R" Us*, 318 F.3d at 452. In *Zippo*, the court held that the exercise of personal jurisdiction based on a website depends on where on a sliding scale of commercial interactivity the website falls. *Zippo*, 952 F. Supp. at 1124. There was personal jurisdiction in *Zippo* because the defendant website "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers. *Id.* at 1126. Here, there is no evidence that Defendants intentionally chose to interact with residents of New Jersey in a similar way to that in *Zippo*.

did not ship the Lumenier batteries in this case directly to New Jersey.  (ECF No. 13-3.)  Plaintiff

also attaches pictures from GetFPV's website that likewise are inadequate to show that Defendants

purposefully targeted New Jersey.   However, in their response to the Motion, GetFPV and

Lumenier concede that they sell products through GetFPV's website to New Jersey consumers.

(*See* Graber Certification ("GetFPV, LLC and Lumenier LLC's only contact with the State of New

Jersey is through passive online sales of their products to New Jersey customers."); Moving Br. at

10 ("Defendants maintain a website that permits individuals from New Jersey to make

purchases.")).

On this record, it is not clear whether there is "something more" for this Court to consider

before determining whether it has specific personal jurisdiction as to Defendants.  This would

include indications that GetFPV's website 1) specifically and intentionally targets New Jersey or

its residents, and 2) knowingly interacts with New Jersey residents in a way to exercise personal

jurisdiction so as to comport with due process.  *Corigliano*, 611 F. App'x at 80; *Zippo*, 952 F.

Supp. at 1124; *Toys "R" Us*, 318 F.3d at 452 (emphasizing the intentional nature of website

interactivity for purposes of purposeful availment); *Lozinski v. Black Bear Lodge, LLC*, Civ. No.

16-7963, 2017 WL 1380416, at *1 (D.N.J. Apr. 10, 2017) (holding that the defendant resort did

not purposefully direct activities toward New Jersey by operating its website or contracting with

the plaintiffs).  The Court therefore finds jurisdictional discovery is warranted.  *See N. Am. Elite*

*Ins. Co. v. Gen. Aviation Flying Serv., Inc*, Civ. No. 18-14575, 2020 WL 1502309, at *6 (D.N.J.

Mar. 30, 2020).

## B.     ARISE OUT OF OR RELATE TO

Jurisdictional discovery is also appropriate to discern to what extent Plaintiff's claims arise

out of or relate to Defendants' contacts.  It is well established that the forum state may exercise

jurisdiction only when the plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations.'" *Ford Motor Co.*, 592 U.S. at 360 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262) (alteration in original). In *Ford*, the Supreme Court held that the defendant's connections to the forum states via billboards, TV and radio spots, print ads, and direct mail were sufficient to show relatedness for purposes of specific personal jurisdiction, even if the specific defective product at issue was not sold in the forum. *Id.* at 355, 365 ("When a company like [the defendant] serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit."). Notably, the Court distinguished between the "arise out of" language, which denotes causation, and the "relates to" language, which contemplates that "some relationship will support jurisdiction without a causal showing." *Id.* at 362.

Here, like in *Ford*, the products in this case were not purchased by a forum resident nor were the products shipped to the forum. In fact, the purchase at issue in this case was made by Hendrix whose billing address indicated that he was from New York, and the products were ultimately shipped to Braddom in Pennsylvania. (Am. Compl. ¶ 17; ECF No. 13-3.) Consequently, based on the facts alleged, the Court finds that Plaintiff is unable to satisfy the "arise out of" (i.e, causation) formulation of the test. However, as *Ford* has clarified, the "relates to" part of the test may be satisfied if a company serves a forum and the alleged defective product causes injury in that forum. *See Ford Motor Co.*, 592 U.S. at 363. The same jurisdictional discovery the Court believes appropriate for an informed analysis of "purposeful availment" should also clarify the relatedness issue by developing the record as to whether Defendants advertised, marketed, or

served a market in New Jersey such that there exists "some relationship [that] will support jurisdiction without a causal showing." *Id.* at 362.

As a practical matter, Lumenier's contacts with New Jersey appear to be more attenuated than GetFVP's contacts. The parties' briefing as to Lumenier is scant. It is therefore unclear to what extent Lumenier participates in GetFVP's marketing, sales, and transactions with New Jersey. To further develop the record, the Court finds that it is appropriate, and not substantially prejudicial to Lumenier, for jurisdictional discovery as to Luminier as well. For these reasons, the Court will direct jurisdictional discovery, limited to what is needed to assess whether Plaintiff's claim relates to Defendants' contacts with New Jersey.

## C.    JURISDICTIONAL DISCOVERY

A court should "ordinarily allow [limited jurisdictional discovery] when a plaintiff's claim to personal jurisdiction is not clearly frivolous," *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (internal quotations omitted), although "jurisdictional discovery is not available merely because the plaintiff requests it." *Lincoln Benefit Life Ins. Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015). Rather, "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (quoting *Toys "R" Us*, 318 F.3d at 455). The Third Circuit has required a "relatively modest showing" for jurisdictional discovery and has deemed discovery appropriate where the defendant is a corporation or limited liability company, like here. *Metcalfe*, 566 F.3d at 336; *N. Am. Elite Ins. Co.*, 2020 WL 1502309, at *7. Notably, however, in setting the scope of such jurisdictional discovery, the Court must be mindful that "[j]urisdictional discovery is not a license for the parties

13

to engage in a 'fishing expedition.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (quoting *Lincoln Benefit Life Ins. Co.*, 800 F.3d at 108 n.38).

Here, the Court finds that Plaintiff's claims are not clearly frivolous and additional facts may support Plaintiff's assertion of specific personal jurisdiction over Defendants. *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) ("the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.").[11]  Accordingly, the Court will grant the parties 60 days to complete jurisdictional discovery, limited to Defendants' purposeful contacts with New Jersey and whether Plaintiff's claims arise out of or relate to Defendants' contacts.  The parties will be instructed to meet and confer and submit a joint letter proposing a schedule for that discovery and for supplemental briefing thereafter.  To the extent a hearing may be required, the parties' joint letter is to propose dates for that hearing.

## VI.    CONCLUSION

For the reasons stated above, the Court will **DENY** Defendants' Motion (ECF No. 11). This denial is without prejudice to Defendants' right to renew their motion upon completion of jurisdictional discovery, if appropriate.  For clarity, should Defendants elect to renew their motion, no pre-motion letter will be required.  An appropriate Order will follow.


Date: April 14, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[11] Notably, Defendants' brief is silent as to its view on whether jurisdictional discovery should be permitted.